# Soperstein *v.* Salsberg.

*Interpleader—Sheriff's interpleader—Fraud—Evidence—Amendment.*

On a sheriff's interpleader where the issue framed is to determine whether the plaintiff in the interpleader, who is the claimant of the goods, has the right to rescind the contract by which he sold the goods to the defendant in the execution, it is proper for the court to refuse to permit the plaintiff to amend his statement by adding a clause to the effect that the judgment which the defendant in the execution had confessed to the defendant in the interpleader, and under which the goods were taken in execution, was collusive and fraudulent. In such a case, if the contract was made in New York, evidence is admissible to show that the defendant in the interpleader knew, or ought to have known, that the defendant in

the execution had acquired an apparent property in the goods by fraudulent practices.

*Sale—Rescission of contract—Fraud.*

When a purchaser of goods at the time of the sale represents that he has a balance of assets over liabilities of about $11,000, and it is established beyond controversy that the assets over liabilities did not amount to over $1000, the question of misrepresentation should be submitted to a jury in a proceeding to set aside the sale.

Argued Jan. 16, 1901. Appeal, No. 4, Jan. T., 1901, by plaintiff, from judgment of C. P. Luzerne Co., Dec. T., 1898, No. 257, on verdict for defendant, in case of I. Soperstein v. David Salsberg et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Sheriff's interpleader to determine the title to property taken in execution.

At the trial the plaintiff moved to amend his statement by adding thereto the following clause:

That in pursuance of an unlawful agreement made between the aforesaid I. Rosenthal & Son, and the aforesaid David Salsberg and other defendants herein, the said I. Rosenthal & Son, on or about October 11, 1898, confessed a certain judgment to No. 31, December term, 1898, in favor of said David Salsberg, trustee, without any bona fide or valuable consideration, and that the said David Salsberg, trustee, caused an execution to be issued thereon, and the sheriff to seize and levy upon the goods mentioned in the statement in this case, for the purpose of divesting this plaintiff of his title to the said goods.

Defendant's counsel: Objected to for the reason that under this issue the amendment cannot be allowed.

The Court: Objection sustained. Exception for plaintiff; bill sealed. [1]

Plaintiff's counsel: We propose to show by the witness on the stand that on the day that the execution was issued by David Salsberg, the defendant in this case, against I. Rosenthal & Son, and about the time of issuing of the same, he had a conversation with I. Rosenthal & Son in reference to their confessing judgment and issuing execution, and that they referred him to David Salsberg, the execution creditor; and that he had

a conversation with Salsberg subsequently in which Salsberg stated to him that the judgment had been confessed and execution issued on it for more money than was due, and that it was done for the purpose of protecting I. Rosenthal & Son from their creditors, and that if he, the witness, would wait until the thing was over and he would return the goods back to I. Rosenthal & Son, that his bill would be paid. This is offered for the purpose of showing that at the time the goods were purchased from the plaintiff in the case, that it was not the intention of I. Rosenthal & Son to pay for them, and that David Salsberg knew it, and that the means to be employed to avoid the payment of those goods was by the confession of a fraudulent judgment to David Salsberg and the issuing of an execution thereon, and that the acceptance of the judgment by David Salsberg and the issuing of execution thereon was part of the scheme of I. Rosenthal & Son, with the assistance of David Salsberg, for the divesting of the title in the plaintiff, and to avoid payment for the goods.

Defendant's counsel: Objected to as irrelevant and immaterial, first for the reason that the witness is not a party to this suit, nor did he at the time of the alleged conversation represent any party to this suit, nor has he represented any party to this suit since; secondly, the judgment cannot be attacked at this stage of the proceedings as the pleadings are now made up.

The Court: Objection sustained. Exception. [4]

The court gave binding instructions for defendant. [2, 3, 5.]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) refusal of amendment. (2, 3, 5) In giving binding instructions for defendant. (4) Ruling on evidence, quoting the bill of exceptions.

*E. F. McGovern*, with him *D. C. Harrower*, for appellant.

*J. T. Lenahans*, of *Lenahans & Lynch*, for appellee.

OPINION BY W. D. PORTER, J., May 23, 1901:

The refusal of the court below to allow the plaintiff to amend his statement, which is the subject of the first specification of error, worked no injury to the plaintiff's cause. The only ques-

tion at issue was the title of the plaintiff to the goods which had been delivered to him by the sheriff. That question, it is true, turned upon the right of the plaintiff to rescind the contract under which he had sold and delivered the goods to the execution defendant, but that right was dependent upon proof of fraud in the contract of sale, and the validity of the judgment of the execution creditor was not directly the subject of inquiry. If the circumstances connected with the entry of the Salsberg judgment were such as to lead to the conclusion that it was a part of a scheme, of which the purchase by Rosenthal was one link, and of which Salsberg had knowledge, to cheat the plaintiff out of his property, then evidence of that fact was competent and material to the determination of the question of fraud in the contract of purchase. Unless the evidence to be offered was material to the determination of the issue as already framed, it was not competent for any purpose, for if the plaintiff was not entitled to rescind the contract of sale, he had no standing in this form of proceeding to attack the judgment under which the goods had been taken in execution.

We have discussed the questions raised by the second, third and fifth specifications of error in our opinion this day filed in the case of Mann v. Salsberg, but the evidence of fraud here presented is so radically different from that which we there considered, that we are constrained to hold that there was error in refusing to submit it to the jury. The salesman who took the order testified that Rosenthal represented, at the time, " that they owed about six or eight hundred dollars on their stock, that is all." The plaintiff testified that, the goods not having been shipped promptly, one of the purchasers came to his store to inquire the cause, and was told that the account was not considered desirable, whereupon he said, " Well, if you want to know any more about us go down to Zeeman Bros., they have our figures ; " the plaintiff went to Zeeman Bros., and was informed by Mr. Zeeman, as to the standing of Rosenthal & Son, " that he had their last figures or statement and he had shipped them goods on the strength of it." He testified further, in substance, that Mr. Zeeman said the figures showed Rosenthal & Son to be worth about $10,000. On the strength of these representations the plaintiff delivered the

goods. The written statement then in the hands of Mr. Zeeman represented that Rosenthal & Son had merchandise on hand to the amount of $10,000, book accounts to the amount of $2,000, fixtures worth $200 and $400 in cash, and that their total indebtedness was $800. " Leaving balance of assets over liabilities, $11,600." It was established beyond controversy at the trial that, at the time these representations were made, Rosenthal & Son were indebted in the sum of $12,017, and that their assets at the same time did not aggregate over $13,000. If misrepresentation is capable of proof it was proved in this case, and as to a material fact. The plaintiffs came up to the standard which the law of Pennsylvania would have required of them, and it seems to be here conceded that the law of the state of New York would have been less exacting. If these goods were delivered in New York then the law of that state must govern. When a contract is governed by the law of a sister state, that law, with regard to the subject-matter, must be proved in each particular case, and the determination of that question is dependent upon the evidence submitted; it is, therefore, manifest that such determination cannot be satisfactory evidence as to the law of such sister state when the same question arises between different parties and in another proceeding. The reports of the judicial decisions of the Supreme Court of Massachusetts, or Pennsylvania, are not evidence of the law of the state of New York.

Evidence of the declarations of David Salsberg, the defendant in the issue, which indicated his knowledge of the fraudulent practices of Rosenthal & Son, and that he did not stand in the position of one who had given credit upon the faith of the apparent property of Rosenthal & Son in the goods, was clearly admissible if the law of the state of New York is as it seems by the defendant conceded to be. Any attempt to strike down the judgment of Salsberg must have been unavailing, but whether Salsberg knew, or ought to have known, that Rosenthal had acquired an apparent property in these goods by fraudulent practices was an entirely different question; if the law of New York be as stated, it was certainly material: Levy v. Cooke, 143 Pa. 607. The fourth specification is sustained.

The judgment is reversed and a venire facias de novo awarded.