## Ambridge Borough, Appellant, *v.* Home Mutual Casualty Co.

Argued April 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*W. Walter Braham, Jr.,* with him *Reed, Ewing, Orr & Reed,* for appellant.

*Charles McC. Barrickman,* with him *Wallover and Barrickman,* for appellee.

194

OPINION BY WRIGHT, J., June 11, 1958:

The Borough of Ambridge, plaintiff, filed a complaint in assumpsit against the Home Mutual Casualty Company, defendant. An answer was filed by the defendant setting up new matter, to which the plaintiff replied. Both parties presented motions for judgment on the pleadings. The court below granted defendant's motion, and judgment was accordingly entered for the defendant. The plaintiff has appealed. The factual situation appears in the following excerpt from the opinion of the court below:

"On September 14, 1953, the Home Mutual Casualty Company, defendant, issued to the Borough of Ambridge, plaintiff, a policy of insurance numbered GL2544, which is designated a public liability policy, to be in force from October 10, 1953 until October 10, 1954. This policy was a contract 'to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property . . . caused by accident and arising out of the hazards hereinafter defined'. The hazards covered are the ownership, maintenance or use of the premises for the purposes of the business of a municipality. Among the premises covered by the policy are twenty-eight miles of streets and sidewalks of the Borough of Ambridge.

"On October 17, 1953, at 11:00 A.M. an employee of the plaintiff, the Borough of Ambridge, was operating a roller belonging to the plaintiff up the grade of Rice Avenue, a borough street within the borough limits of the plaintiff, when the motor of the roller stalled, causing it to roll back down Rice Avenue and crash into a garage owned by Theodore Janicki and Sophie Janicki, his wife. At the time of the accident the roller was being driven along Rice Avenue to a place

where it was to be used in the maintenance and repair of the borough streets. Notice of the loss was given to the defendant on October 19, 1953, by its agent, John W. Soldressen, and on April 9, 1954, by the borough solicitor.

"At No. 54 September Term, 1953, in the Court of Common Pleas of Beaver County, Theodore Janicki and Sophie Janicki filed an action in trespass against the Borough of Ambridge. On October 17, 1955, a jury empaneled to try these proceedings returned a verdict in favor of Theodore Janicki and Sophie Janicki and against the Borough of Ambridge, in the amount of $2,439.00.

"Although the defendant, Home Mutual Casualty Company, had notice of the suit at No. 54 September Term, 1954, it denied coverage under its policy to the plaintiff and refused to aid in the defense of said suit.

"At No. 61 March Term 1957, in the Court of Common Pleas of Beaver County, the Borough of Ambridge as plaintiff filed an action in assumpsit against the Home Mutual Casualty Company as defendant for the loss resulting to the plaintiff through defendant's failure and refusal to afford the alleged coverage specified in its insurance policy GL2544. In its answer the defendant admitted the facts as to the accident, the prior recovery by the Janicki's, and the issuance of its public liability policy; but denied that its policy granted coverage for the accident, on the grounds that the specific risk involved in the case at bar was not listed in the schedule of coverage attached. In 'new matter' alleged in its answer the defendant alleges that the Manual of Liability Insurance defines the risks of its policy and specifically excludes coverage for claims arising out of the operation of motor vehicles on the streets and sidewalks insured. In its reply the plaintiff avers that the statements of the Manual are not

a portion of the insurance policy issued to the plaintiff . . .

"There is no dispute as to the facts in the case, as appears from the pleadings; the only dispute is as to the interpretation of the insurance policy as affected by the law relating thereto. The Court is asked to decide the question whether the insurance policy covers the accident herein involved".

It may be helpful to explain the physical structure of policy GL2544. It expressly sets forth that the coverage is under "Division 1—Premises and Operations". In the space provided for a listing under said division appear the following words: "As per schedule attached". There is attached to the policy an endorsement denominated "Schedule of Operations". This endorsement contains a number of entries across the page divided into four columns. The first column is entitled "Description of Hazards". The pertinent item listed thereunder reads as follows: "Streets & Sidewalks #379". The second column is entitled "Premium Bases". The corresponding entry under that heading is "28 Mi". The remaining two columns of the endorsement are entitled "Rates" and "Premiums", and it is not necessary to set forth the corresponding entries under those headings.

The position of appellee, sustained by the court below, is that its Manual of Liability Insurance filed with the Insurance Commissioner in accordance with Section 4 of the Act of 1947, P. L. 538, 40 P.S. 1184,[1] expressly sets forth under Code #379 as follows: "This

---

[1] "Every insurer shall file with the Commissioner every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every such filing shall state the proposed effective date thereof and shall indicate the character and extent of the coverage contemplated".

classification provides coverage solely for the existence of streets and sidewalks and excludes claims arising out of (a) the ownership, maintenance or use of vehicles owned, operated or hired by or for the insured, and (b) public utility operations by the insured. Coverage for construction, maintenance or repair must be written in accordance with the Manufacturers' and Contractors' or Owners' or Contractors' Protective Liability Manual".

Appellant's contentions are: (1) that the insurance policy provides coverage for the accident in question; (2) that the type of accident involved is not excluded by the printed or typewritten portions of the policy; (3) that extraneous sources outside the four corners of the policy cannot vary the plain meaning of the contract; (4) that the coverage disclosed by the policy may not be limited by resorting to the Manual of Classifications; and (5) that Section 4 of the Act of 1947 does not change or obviate the requirements of Section 318 of the Act of 1921, P. L. 682, 40 P.S. 441.[2]

It is readily apparent that the controlling question is whether the coverage classification set forth in appellee's Manual of Liability Insurance filed with the Insurance Commissioner under the Act of 1947, and expressly referred to by code number in appellant's

[2] "All insurance policies . . . in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties".

policy, must also be contained in or attached to the policy under the Act of 1921. As did the court below, we answer this question in the negative.

Appellant argues that, under the rulings in *Mowry v. National Protective Society,* 27 Pa. Superior Ct. 390, and *Campbell v. Great Eastern Casualty Co.,* 73 Pa. Superior Ct. 333, the coverage classification could not be received in evidence. However, as pointed out by the Supreme Court in *Employers' Liability Assurance Corp. v. Lebanon Auto Bus Co.,* 360 Pa. 42, 59 A. 2d 880, the documents under consideration in the *Mowry* and *Campbell* cases were in the category of constitutions and by-laws. In holding that a rate table not contained in the policy was properly introduced in evidence, the Supreme Court said: "It will be observed that what must be attached are 'copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to . . .'" In this case no application, constitution, or by-laws are involved. Under the familiar principle of ejusdem generis, the words 'or other rules' referred to, necessarily relate to and are restricted to the preceding words application, constitution or by-laws".

In his well-considered opinion for the court below, President Judge MCCREARY makes the following appropriate statement: "We are inclined to the view that the Manual of Classifications, Rules and Rates of the defendant company, on file with the Insurance Commissioner of Pennsylvania, is part and parcel of the contract between the parties, even though not attached to the policy or referred to except by the code #379. The evil which was sought to be eradicated by the Insurance Law of 1881, the forerunner of the Act of May 17, 1921, supra, was 'some wrongful concealment by the Company of a condition affecting liability': Sipp v. Philadelphia Life Insurance Co., 293 Pa. 292, 300.

A company is no longer permitted to have some secret constitutional provision, by-law, or rule to spring on an insured by way of defense in whole or in part. In order to be binding on an insured such constitutional provision, by-law, or rule must be attached to the policy. There is no such evil inherent in a Manual of Classifications, Rules and Rates on file with the Insurance Commissioner, as required by law".

There is no question in this case of concealment or over-reaching on the part of the insurance company. It is not without significance that appellant carried with another insurance company a policy concededly providing the type of coverage for which liability is here sought to be imposed. Appellant received from this appellee a type of coverage which it understood and for which it paid. We agree with the court below that the policy should not be enlarged to cover a type of risk never intended.

Judgment affirmed.